Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| CARLOS JOSÉ MEDRANO GARCÍA<br><br>**Parte recurrente**<br><br>v.<br><br>JUNTA DE LIBERTAD BAJO PALABRA<br><br>**Parte recurrida** | **TA2026RA00244** | **REVISIÓN ADMINISTRATIVA**<br>Procedente la Junta de Libertad Bajo Palabra<br><br>Caso Núm.:<br>**B-1779-25**<br><br>Sobre:<br><br>No Jurisdicción- Ley Núm. 85-2024/Cierre y Archivo |

Panel integrado por su presidente, el juez Sánchez Ramos, el juez Pérez Ocasio y la juez Trigo Ferraiuoli

Pérez Ocasio, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 8 de junio de 2026.

Comparece ante nos por *derecho propio*, Carlos Medrano García, en adelante, Medrano García o recurrente, solicitando que revisemos el dictamen emitido por la División de Remedios Administrativos, en adelante, División, del Departamento de Corrección y Rehabilitación, en adelante, DCR, el 5 de febrero de 2026, y notificada a este el 9 de febrero de 2026. En la misma, la agencia recurrida *se declaró sin jurisdicción* para atender el petitorio de Medrano García.

Por los fundamentos que expondremos a continuación, **confirmamos** el dictamen recurrido.

### I.

El recurrente se encuentra cumpliendo una condena de setenta y ocho (78) años con seis (6) meses, por incurrir en los delitos de Actos Lascivos,[1] Violación y Tentativa de Violación.[2] Luego de

---

[1] Artículo 105 del Código Penal de 1974, Ley Número 115 de 22 de julio de 1974, 33 LPRA ant. sec. 4067.
[2] Artículo 99 del Código Penal de 1974, Ley Número 115 de 22 de julio de 1974, 33 LPRA ant. sec. 4061.

solicitarle a la Junta de Libertad Bajo Palabra, en adelante, JLBP, la concesión de dicho privilegio, el 9 de octubre de 2024, la agencia en cuestión emitió una *"Resolución"* denegando el mismo.[3] En su dictamen, la JLBP concluyó que no tenía jurisdicción porque los delitos concernientes a la sentencia del recurrente lo excluyen como posible beneficiario de la libertad bajo palabra.

Ahora bien, el 21 de noviembre de 2025, Medrano García presentó la *"Solicitud de Remedio Administrativo"*, identificado como B-1779-25, ante la División.[4] En la misma, impugnó la determinación de la JLBP del 12 de noviembre de 2024, alegando que dicho dictamen retroactivamente, y erróneamente, aplicó las enmiendas de la Ley Núm. 85-2024. Sin embargo, el 5 de febrero de 2026, la División emitió respuesta, indicándole al recurrente, en síntesis, que no tenía facultad para revisar las determinaciones de la JLBP, por ser esta una entidad autónoma.[5] No obstante, el 10 de febrero de 2026, Medrano García presentó una *"Solicitud de Reconsideración"*.[6] El 27 de febrero de 2026, la División acogió la petición aludida, y el 6 de abril de 2026, emitió una *"Resolución"* reiterando y ampliando su dictamen.[7]

Inconforme aun, el 6 de mayo de 2026, Medrano García recurrió ante esta Curia mediante recurso de Revisión Administrativa, haciendo los siguientes señalamientos de error:

> **PRIMER ERROR:** Erró el área de sociales al indicar que no puede intervenir para la Junta de Libertad Bajo Palabra en su remedio administrativo y que solo acata sus órdenes.
>
> **SEGUNDO ERROR:** Erró el área de remedios administrativos [al] divulgar [que] no tiene jurisdicción ya que la Junta [de Libertad] Bajo Palabra es cuasi judicial, que tiene los reglamentos y leyes aplicables.

---

[3] Apéndice del recurso, Anejo #3.
[4] *Íd.*, Anejo #4.
[5] *Íd.*, Anejo #5.
[6] *Íd.*, Anejo #6.
[7] *Íd.*, Anejo #7.

**TERCER ERROR:** Erró la Junta [de] Libertad Bajo Palabra al declarar [que] no tiene jurisdicción por la Ley Núm. 85-2024 y el cierre y archivo.

**CUARTO ERROR:** Erró el área de récord [al] quitar/desaparecer el cómputo mínimo de la sentencia de la tabla.

**QUINTO ERROR:** Erró el Estado [y] la Junta de Libertad Bajo Palabra, al aplicar [retroactivamente] un estatuto de ley civil o criminal, como lo es la Ley Núm. 85-2024. Que se relaciona con los delitos y convicciones o sus consecuencias y hace más onerosa, a la larga, las penas que han de cumplirse que la ley anterior, Ley Núm. 85-2022, debido a que excluye al recurrente de la posibilidad de ser elegible al privilegio de libertad bajo palabra, y tiene el efecto equivocado de perjudicarlo. Su aplicación resulta en una inconstitucionalidad prohibida por las Constituciones de Estados Unidos y Puerto Rico.

El 13 de mayo de 2026 emitimos una *"Resolución"* en la que concedimos un término a vencer el 1 de junio de 2026 para que la parte recurrida presentara su posición respecto al recurso, conforme a la Regla 7B(5) del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, pág. 15, 215 DPR __ (2025). El 29 de mayo de 2026, el Procurador General de Puerto Rico, en representación del DCR presentó su *"Escrito en Cumplimiento de Orden".*

Perfeccionado el recurso de autos, y con el beneficio de los escritos de ambas partes, procedemos a resolver.

**II.**

**A. Revisión Judicial de Decisiones Administrativas**

El Artículo 4.006 (c) de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico, Ley Núm. 201-2003, 4 LPRA sec. 24y(c), otorga la competencia apelativa al Tribunal de Apelaciones para revisar las decisiones, órdenes y resoluciones finales de las agencias administrativas. *Vur-Jer v. Junta Reglamentadora,* 2026 TSPR 46, 218 DPR ___ (2026); *Miranda Corrada v. DDEC,* 211 DPR

738, 745 (2023); *AAA v. UIA*, 200 DPR 903, 910-911 (2018); *Asoc. Condómines v. Meadows Dev.*, 190 DPR 843, 847 (2014). A su vez, posibilita el poder constatar que los organismos administrativos "cumplan con los mandatos constitucionales que rigen el ejercicio de su función, especialmente con los requisitos del debido proceso de ley". *Tricoche, Rivera v. Luis Freire*, 2025 TSPR 92, 216 DPR ___ (2025); *Vázquez et al v. DACo*, 2025 TSPR 56, 215 DPR ___ (2025); *Simpson, Passalaqcua v. Quirós, Betances*, 214 DPR 370, 377 (2024); *Voilí Voilá Corp. et al. v. Mun. Guaynabo*, 213 DPR 743, 754 (2024); *Comisión Ciudadanos v. G.P. Real Prop.*, 173 DPR 998, 1015 (2008). De esta forma, se vela por que los ciudadanos tengan "un foro al cual recurrir para vindicar sus derechos y obtener un remedio frente a las actuaciones arbitrarias de las agencias". *Íd.*

La Sección 4.2 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, en adelante, LPAUG, Ley 38-2017, 3 LPRA sec. 9672, dispone que la revisión administrativa ante el Tribunal de Apelaciones se hará respecto a las órdenes o resoluciones finales, luego de que el recurrente haya agotado "todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente". *Vur-Jer v. Junta Reglamentadora*, supra. Es decir, no serán revisables directamente a este Tribunal las órdenes o resoluciones interlocutorias de una agencia, esto es, aquellas que se emitan durante los procesos administrativos que se desarrollan por etapas, y no sean finales.

Así pues, la disposición final de la decisión de la agencia es requisito básico y jurisdiccional para que este foro pueda ejercer su función revisora. El Tribunal Supremo de Puerto Rico ha establecido que para que una orden emitida por una agencia pueda ser revisada ante el Tribunal de Apelaciones, deben cumplirse dos requisitos: (i) que la parte adversamente afectada por la orden haya agotado los remedios provistos por la agencia y (ii) que la resolución sea final y

no interlocutoria. *Depto. Educ. v. Sindicato Puertorriqueño*, 168 DPR 527, 543 (2006). *Procuradora Paciente v. MCS*, 163 DPR 21, 34-35 (2004). Se entiende como final la orden o resolución emitida por la última autoridad decisoria o adjudicativa de la agencia administrativa. *Bird Const. Corp. v. A.E.E.,* 152 DPR 928, 935 (2000). Nuestro Alto Foro lo ha descrito como una orden o resolución que "le ponga fin al caso ante la agencia y que tenga efectos sustanciales sobre las partes". *Vur-Jer v. Junta Reglamentadora*, supra; *Crespo Claudio v. O.E.G.*, 173 DPR 804, 812-813 (2008); *Comisionado Seguros v. Universal*, 167 DPR 21, 28-29 (2006).

### B. Jurisdicción Primaria

Por su parte, las agencias administrativas, *solo poseen aquellas facultades que les han sido conferidas expresamente mediante sus leyes habilitadoras*, así como aquellas que resulten necesarias e indispensables para cumplir con sus deberes y responsabilidades. *Tricoche, Rivera v. Luis Freire,* supra; *CBS Outdoor v. Billboard One, Inc. et al.*, 179 DPR 391, 403 (2010). Cuando la Asamblea Legislativa delega determinadas funciones gubernamentales en una agencia administrativa, puede surgir incertidumbre respecto a cuál foro, si el judicial o el administrativo, tiene la jurisdicción original para atender controversias con dichas funciones delegadas. *Rodríguez Rivera v. De León Otaño*, 191 DPR 700, 709 (2014).

En ese contexto surge la doctrina de jurisdicción primaria, la cual constituye una norma de autolimitación judicial reconocida en nuestro ordenamiento jurídico. *Vázquez et al. v. DACo*, 2025 TSPR 56, 216 DPR ___ (2025). Esta doctrina tiene como propósito atender situaciones en las que existe la interrogante sobre qué foro debe intervenir primero, determinando si corresponde a la agencia administrativa o al tribunal ejercer la facultad inicial de atender y

adjudicar en al asunto. *Beltrán Cintrón et al. v. ELA et al.*, 204 DPR 89, 102 (2020).

Lo anterior no implica que la jurisdicción de los tribunales haya sido descartada, sino que se trata de un asunto de prioridad donde la jurisdicción del foro judicial es meramente aplazada o pospuesta. *CBS Outdoor v. Billboard One, Inc. et al.*, *supra*, pág. 404*; Ortiz v. Panel F.E.I.*, 155 DPR 219, 243 (2001). En su aplicación, la doctrina en discusión requiere que:

> ...los tribunales emprendan la tarea de examinar los alcances de la ley habilitadora de una agencia y determinar si el asunto cae estrictamente dentro de su ámbito. Además, le exige que ponderen y determinen si es imprescindible y necesario que se resuelva en favor de que intervenga inicialmente la agencia.
>
> *Consejo de Titulares v. Gómez Estremera et al.*, 184 DPR 407, 430 (2012).

Para poder determinar a cuál foro le corresponde atender un reclamo planteado, la doctrina de jurisdicción primaria se divide en dos vertientes: la *jurisdicción primaria exclusiva* y la jurisdicción primara concurrente. *Municipio Arecibo v. Municipio Quebradillas*, 163 DPR 308, 326 (2004). La primera atiende la situación en la que la propia ley establece que la agencia es el foro que inicialmente cuenta con jurisdicción exclusiva para entender la controversia, mientras que la segunda se da cuando la ley autoriza que se presente la reclamación en cualquiera de los dos foros, ya sea en el administrativo o en el judicial. *SLG Semidey Vázquez v. ASIFAL*, 177 DPR 657, 676 (2009).

La jurisdicción primaria exclusiva es realmente una estatutaria, y no una norma de índole jurisprudencial. *JJJ Adventure v. Consejo de Titulares y otros*, 2025 TSPR 123, 216 DPR ___ (2025). A esos efectos, la asignación de jurisdicción exclusiva a un organismo administrativo *debe desprenderse expresamente* de la ley habilitadora o surgir de la misma por implicación necesaria. *Báez Rodríguez et al v. E.L.A.,* 179 DPR 231, 241 (2010). Como resultado,

los tribunales quedan excluidos de intervenir en primer lugar en las materias o asuntos sobre los cuales se le ha conferido jurisdicción exclusiva a una agencia. *Rodríguez Rivera v. De León Otaño*, supra, pág. 709. No obstante, la jurisdicción primaria exclusiva no soslaya la revisión judicial, solo la pospone hasta que el organismo administrativo emita su decisión final. *CBS Outdoor v. Billboard One, Inc. et al.*, *supra*, pág. 405; *SLG Semidey Vázquez v. ASIFAL*, supra, pág 677.

### C. Agotamiento de Remedios Administrativos

De otra parte, la doctrina de agotamiento de remedios administrativos es también una norma de autolimitación judicial, pero se configura en supuestos distintos. En específico, al amparo de la doctrina de agotamiento administrativo, una parte que desea obtener un remedio en una agencia debe utilizar todos los medios administrativos disponibles antes de acudir a un tribunal. *AAA v. UIA*, supra, pág. 913. Ello implica que la revisión judicial no está disponible hasta tanto la parte afectada haya utilizado todos los procedimientos correctivos ofrecidos por el procedimiento administrativo. *Íd.*

La doctrina de agotamiento de remedios administrativos cumple varios objetivos, tales como permitir que la agencia desarrolle un historial completo del asunto ante su consideración, asegurar que la agencia pueda adoptar las medidas correspondientes de conformidad con la política pública formulada por una entidad, y evitar los disloques causados por las intervenciones inoportunas de los tribunales en distintas etapas interlocutorias. En otro extremo, facilita la revisión judicial, porque asegura que los tribunales tengan información más precisa sobre el asunto en controversia y les permite tomar una decisión más informada. También, promueve una distribución más eficiente de tareas entre los poderes ejecutivo y judicial. *Íd.,* pág. 914.

Lo cierto es que existen varios factores que operan a favor de preterir la doctrina de agotamiento de remedios. *ORIL v. El Farmer, Inc.,* 204 DPR 229, 240 (2020). Sin embargo, una mera alegación de violación a derechos constitucionales o la ineficacia de los remedios administrativos no justifica eludir el proceso administrativo. *Acevedo v. Mun. de Aguadilla,* 153 DPR 788, 806-807 (2001). El solicitante que pretenda desviarse del trámite administrativo alegando violación a un derecho constitucional tiene la obligación de demostrar que el agravio al referido derecho es de tan grave y patente intensidad, que se justifica eludir el cauce administrativo. *Procuradora Paciente v. MCS,* supra, pág. 37; *Guzmán y otros v. ELA,* 156 DPR 693, 714 nota 19 (2002), citando a *Delgado Rodríguez v. Nazario de Ferrer,* 121 DPR 347, 357 (1988).

### D. Junta de Libertad Bajo Palabra

La Constitución de Puerto Rico establece como política pública "reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social". Artículo VI, Sección 19, Const. PR, LPRA Tomo I. *Lebrón Laureano v. Dpto. Corrección,* 209 DPR 489, 498-499 (2022). A esos fines existe la Junta, regulada, a su vez, por la Ley Número 118 de 22 de Julio de 1974, en adelante, Ley de la Junta, 4 LPRA sec. 1501, *et seq.* El sistema de libertad bajo palabra permite que una persona que haya sido convicta y sentenciada a un término de cárcel cumpla la última parte de su sentencia fuera de la institución penal, sujeto al cumplimiento de las condiciones que se impongan para conceder la libertad. *Maldonado Elías v. González Rivera,* 118 DPR 260, 275 (1987). A tales efectos, tiene el propósito principal de ayudar a las personas confinadas a reintegrarse a la sociedad en forma positiva tan pronto

estén capacitados, sin tener que estar encarcelados por todo el término de la sentencia impuesta. Artículo 3 de la Ley de la Junta, *supra*, sec. 1503.

El Artículo 3(a)(6) de la precitada Ley dispone que para determinar si conceder el privilegio de libertad bajo palabra, la Junta tendrá ante sí toda información posible sobre el historial social, médico, ocupacional y delictivo de cada confinado. Ley de la Junta, *supra*, sec. 1503. A esos fines, el Artículo XIV de la Sección 14.1(A) del Reglamento de la Junta de Libertad Bajo Palabra, Reglamento Núm. 9232 de 18 de noviembre de 2020, establece que "[l]a Junta tomará su determinación a base de la preponderancia de la prueba, a la luz de la prueba presentada durante la vista y la totalidad del expediente del caso". A su vez, "evaluará las solicitudes del privilegio, caso a caso, conforme al grado de rehabilitación y ajuste que presente el peticionario durante el término que ha estado en reclusión". Artículo X, Sección 10.1(A), Reglamento de la Junta de Libertad Bajo Palabra, *supra*.

La Junta es responsable de considerar el "mejor interés de la sociedad" y concederá los privilegios de libertad que está facultada para otorgar "cuando las circunstancias presentes [le] permitan [...] creer, con razonable certeza que tal medida habrá de ayudar a la rehabilitación del delincuente". Artículo 3(a) de la Ley de la Junta, supra, sec. 1503.

Por ser relevante a la controversia de marras, destacamos que el Artículo XV del Reglamento de la Junta de Libertad Bajo Palabra, *supra*, encausa lo relevante a la reconsideración administrativa y la Revisión Judicial. La Sección 15.1 del precitado reglamento requiere que la persona adversamente afectada por la determinación de la JLBP que desee solicitar reconsideración, presente la misma en un término de veinte (20) días desde el archivo en autos de la notificación de la misma. Ahora bien, la Sección 15.2 del Reglamento

de la Junta de Libertad Bajo Palabra, *supra,* dispone lo siguiente, con relación a la revisión judicial:

> Agotado el proceso de reconsideración, la parte adversamente afectada por una orden o resolución final de la Junta podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días calendario contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la Junta o a partir de la fecha aplicable de las dispuestas en la Sección 15.1 de este Reglamento, cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración. La parte notificará la presentación de la solicitud de revisión a la Junta y a todas las partes dentro del término para solicitar dicha revisión.

Finalmente, huelga mencionar que por su naturaleza estatutaria, y lo establecido en nuestra jurisprudencia, los beneficios de libertad bajo palabra ***no son derechos que se puedan exigir,*** sino que se trata de ***privilegios*** cuya concesión y administración son puramente discrecionales y recaen en la Junta. Estos son privilegios concebidos para ayudar a los convictos en su proceso de rehabilitación y se considera que mientras se disfruta de estos beneficios, la persona está técnicamente en reclusión. *Pueblo v. Negrón Caldero,* 157 DPR 413 (2002); *Pueblo v. Martínez Rivera,* 99 DPR 568, 575 (1971).

**III.**

Medrano García recurre ante esta Curia solicitando que revisemos la determinación de la División, referente a un recurso de remedio administrativo presentado por este. En sus señalamientos de error, el recurrente aduce, en apretada síntesis, que el DCR se equivocó al declarase sin jurisdicción para atender la solicitud de este. Argumenta, además, sobre la aplicación de la Ley Núm. 85-2024 a su caso, además de otros reclamos de índole constitucional. *No le asiste la razón.*

Aunque la agencia recurrida en este caos es el DCR, los errores señalados versan sobre una determinación de la JLBP, mediante la cual denegó concederle libertad bajo palabra a Medrano García durante el año 2024. Por eso, deseamos comenzar nuestras expresiones recordando que la libertad bajo palabra es un beneficio de naturaleza privilegiada. Si bien esta alternativa a la reclusión carcelaria responde a la política pública de nuestro estado de derecho sobre la rehabilitación, la misma no es un derecho a merced de nuestra Constitución. Sobre esto último, distinguimos que la JLBP goza de gran amplitud y discreción a la hora de conceder la libertad bajo palabra. Aun cuando un interesado en la misma puede impugnar la determinación de la JLBP, no puede así hacerlo so pretexto de violaciones a derechos fundamentales. Dicho lo anterior, evaluemos el dictamen recurrido, a la luz de la normativa que encausa nuestra facultad revisora sobre determinaciones administrativas.

El recurrente solicitó ser considerado por la JLBP el 9 de octubre de 2024. El 10 de diciembre de 2024 la agencia en cuestión le denegó la concesión del beneficio de libertad bajo la palabra. Cómo expusiéramos previamente, la JLBP es una agencia administrativa autónoma, que cuenta con un proceso para atender solicitudes de reconsideración. Por ello, su Ley Habilitadora dispone que los peticionarios a quienes se les deniegue el beneficio, y deseen solicitar la reconsideración del dictamen, deberán solicitarla mediante escrito ante la JLBP dentro de los veinte (20) días luego del archivo en autos la notificación de la determinación. Además, surge del Reglamento de la Junta de Libertad Bajo Palabra, *supra*, no es hasta que se haya agotado este remedio, que entonces procede el recurso de revisión administrativa ante el Tribunal de Apelaciones de Puerto Rico.

De hecho, en el Anejo #3 del recurso presentado ante esta Curia por Medrano García, surge la *"Resolución"* de la JLBP, fechada el 9 de octubre de 2024, denegándole el privilegio solicitado. Al pie del documento en cuestión, surgen las instrucciones precitadas. La porción aludida del documento, revisado por el recurrente y sometido ante nos por este, reza de la siguiente manera:

### ADVERTENCIAS

La parte afectada, por la presente resolución, podrá radicar ante la Junta de Libertad Bajo Palabra, una reconsideración de esta, dentro del plazo de veinte (20) días, contados a partir de la fecha en que le fue notificada. Dicha solicitud de reconsideración deberá presentarse por escrito, consignando claramente la palabra Reconsideración como título y en el sobre de envío. Si la Junta de Libertad Bajo Palabra no tomara alguna acción con relación a dicha moción de reconsideración, dentro de los quince (15) días de haberse radicado, esta se considerará rechazada de plano, por lo cual el término de treinta (30) días para solicitar la revisión judicial, ante el Tribunal de Apelaciones, comenzará a contar a partir del transcurso de los quince (15) días previamente indicados. Si la Junta Libertad Bajo Palabra tomase alguna determinación, sobre la moción de reconsideración presentada, la resolución final, adjudicando dicha reconsideración, deberá ser emitida dentro de los noventa (90) días siguientes a la fecha en que fue radicada la moción de reconsideración, salvo que la Junta Libertad Bajo Palabra, por justa causa, y dentro de esos noventa (90) días, prorrogue el plazo por un periodo que no exceda de treinta (30) días adicionales. Si la Junta de Libertad Bajo Palabra no emitiera una resolución final, adjudicando la reconsideración radicada dentro del plazo de los noventa (90) días, la agencia perderá jurisdicción sobre dicha reconsideración y el término para solicitar la revisión judicial, ante el Tribunal de Apelaciones, comenzará a contar nuevamente a partir de la fecha en que expiró el término de noventa (90) días. De no optar por el procedimiento de reconsideración ante la Junta de Libertad Bajo Palabra, la parte afectada podrá, dentro del término de treinta (30) días, contados a partir de la fecha del archivo en autos de esta resolución, presentar un recurso de revisión judicial ante el Tribunal de Apelaciones.

En vista de lo anterior, es forzoso concluir que la JLBP tiene jurisdicción primaria exclusiva para atender las peticiones de reconsideración de los peticionarios a quienes se les deniegue el privilegio. Medrano García erró al presentar la suya ante el DCR. Procedía, por el contrario, que lo hiciera ante la JLBP –la agencia con jurisdicción y competencia para reconsiderarse– durante el término de veinte (20) días posterior a la notificación de la decisión de la agencia en su contra. Luego de agotar este remedio administrativo, entonces podía recurrir ante nos mediante recurso de revisión administrativa.

Por ello, concluimos que no se equivocó la División al declarar sin jurisdicción al DCR para atender el dictamen de la JLBP. La agencia recurrida no tiene facultad para revisar los dictámenes de la JLBP. Así, a la luz de la doctrina de jurisdicción primaria y agotamiento de remedios administrativos, procede que confirmemos la decisión de la División.

**IV.**

Por los fundamentos antes expuestos, ***confirmamos*** *el dictamen recurrido.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones